Good afternoon, judges. I'm Michael Cox, appearing on behalf of the appellant Heather Brann. And may it please the court, we are here to ask the court, respectfully, to reverse the lower court orders and judgment that denied my client post-petition interest at the state contract rate, as opposed to the federal judgment interest rate, which is de minimis. How much money is the difference? I believe it's over $100,000. It's quite some, judge. It's not a minor amount. So it is a, from our perspective at least, it is a big issue. And we're not just talking about pennies. In any event, just to cut to the heart of the case, the main issue is whether my client has an attorney's lien under ORS 87.445, which, as you all know from reading the briefs, is a very simple one-sentence statement of the Oregon attorney's lien statute for a charging lien. And we believe the interpretation of it is plain and simple, and we've given the lower court orders. I've got to tell you, I've never heard of a claim quite like this. I've heard of attorney's liens. I'm familiar with them running against the client and other claimants against the client and against the fund received by the client. But that's not where this one goes. This one is against the former employer. Was there any precedent showing an attorney lien being applied against a former employer? I don't believe specifically that. Isn't that a problem? No, it's not. And I don't think it was even disputed by the other side, because we have Potter v. Schlesser, which tells us this is a charging lien. What does it charge against? What race, ORS, does it charge against? Well, there's this fund of money, this 40 percent or 45 percent of the fee that goes from the client into the WELOP fund, which comes into the bankruptcy estate, and the charge is against that chunk of money there. The client's recovery? Yes. Yeah, it comes from the client's recovery. Has the client's recovery been distributed? They have now. They have now. When that – you mean did the clients receive their portion? Yeah. Yes, they did. And did all the attorneys receive their fees out of it? Then the fee portion would go over to the WELOP for distribution to the attorneys, and Ms. Brand made a lien claim against those portions while they were in the estate. But her claim, nonetheless, is against the law firm. As I read this state statute, the claim would be against the parties to the pain pump cases, I'll call them. That's not what we have here. Same point that Judge Clifton made, I think. I'm struggling with how she fits into the statutory scheme. Help me, how do you marry the language of the statute with the fact that the entity from whom she's seeking the claim is not a party to the pain pump cases, which is the basis of the work that she did? Right. I mean, if you take a look at the Oregon Supreme Court decision in Potter v. Schlesser, the claim there wasn't made against the client. The claim there was made against the defendant in the underlying case because that defendant, I don't know if you remember that. But it was a party to the case, nonetheless. A party to the case, nonetheless. And that's what troubles me is that I guess I get it if it's made against the claim, a party to the case, because nonetheless, they're still in the mix. Here you've got a law firm. She's working for the law firm. Apparently did a really good job, got paid all of her principal fees and bonuses and the like. We're talking about the interest rate. And it's hard to see, to my way of thinking, any case or any reasoning that would allow us to make the statute apply in this context. How does that Oregon case help you realistically? Because it says it doesn't just apply to the client as a charging lien, that it would follow the proceeds no matter where the proceeds go. This is a charging lien against the law firm for the work that she did for the law firm, right? It is for the fees as decided, as calculated underneath the fee sharing agreement that they had. I understand that the calculation was made because of the work she did on the underlying. But the reality is her employer, if you will, or the contract was with the law firm. She was paid for the work that she did for them. Not for the underlying clients, not for the paying from clients, defendants or plaintiffs. And therein lies the difference, because the Oregon cases all seem to relate to clients or parties to the fee, the underlying dispute. In due respect, I think you're looking at it a little bit narrowly, Judge. And that is because she's not working for just the law firm. And that's not the case under her agreement with the law firm or the client. Was she entitled to be paid by anyone but the law firm? Yes. Who? She could have had a claim against the clients. Well, that's the claim you're making right now. That's the claim you're asserting. She had no contract with the client. Well, she does. And we would disagree with that because we believe she had legal claims against the client. And I can – I'll tell you what they are. If she went into court and sued the client, is there any chance whatsoever she would get a judgment or collect? Absolutely. The client's agreement is with the firm, and the firm's been paid. How can she collect separately? No, the claim against the client would have been this. If the client – I'll give you a hypothetical. If the client decides, I'm not paying anybody. I'm taking 100 percent of this money. And Wheelock, for whatever reason, is gone, disappears. They're not asserting anything. She could go and sue that client either on express contract, given the language in the retainer agreements, that says – and I can give you an example of – I'm not going to try to answer your hypothetical, but that's plainly not anything close to what happened here. No, I mean it's because – Let's try what happened here. Did the client owe a penny to anybody else? Not at the point the client gives the money, the 40 percent, to one of the attorneys in the market. Right, because that's with whom the client has a contractual obligation to pay the fee. Right. And so her dispute's not with the client at all in this case, is it? It would be if the client didn't pay the fee. I know, but as Judge Clifton indicated, we get to make up hypotheticals, but you don't. Right. So in this case, in this case, what happened was all the money that the client was required to pay to the attorneys was paid. Now we have a squabble among the attorneys, correct? Correct. Why does your client have any rights against the client in this circumstance? That's what Judge Clifton was asking. How could your client make any claim in this circumstance against the client? The client has complied perfectly with their obligations under the fee agreement. Indeed, they don't even know of the existence of your client and have never entered into any agreement with her. So they pay? They pay the lawyers, and now the lawyers are fighting, and you're saying, nonetheless, you have a claim against the client under Oregon law. Tell me why. Right. Well, I don't think the lien doesn't disappear by the mere fact of the client then paying the fee. No, but the lien could only attach if you had a claim against the client, doesn't it? Right. So it attaches at the beginning. So when the 100% of the recovery comes in at the beginning, before the client pays it out, she does have a claim against the client. Even though the client knows nothing of her existence and has no agreement with her? The client does know of her existence and has agreed to her in all the agreements. They note that. That somebody did your subcontracting. Could the client sue her for malpractice if she screwed up during the case? Absolutely. She had an attorney-client relationship with them. She wasn't a person behind the scenes in a law library doing a bunch of work somewhere. She was at depositions with these clients. She was representing them at hearings. She was the main client contact. She was on the phone with them day in and day out. When they saw the face of the firm, it was Ms. Brand who they saw. They didn't see Wheelop. They may have never seen Williams, Love, or any of these other people. Regardless of who they saw, doesn't the agreement that she signed with the law firm indicate that it's the law firm's client and she's working for the firm? No, because there's a term in there that goes farther than that. There's a term in there that acknowledges they are agreeing to fee sharing in there, and I could read that specific term to you that notes, Wheelop shall ensure that any client with respect to which I render services, any client with respect to which I render services, so she's rendering services to the client for a pain pump matter, consults to Wheelop sharing its fee with me. Okay, so can you cite us any Oregon case in which somebody who didn't have a direct attorney-client relationship with the client was allowed to assert a charging lien against her recovery? The short answer to that is no. You're asking us to make Oregon law, so that's why I'm asking. Yeah, and the problem with that is there isn't a whole lot of law in this area, number one, but I disagree with the notion that she doesn't have a direct attorney-client relationship with these clients. She did have a direct attorney-client relationship. She would have been held to account. No, we don't dispute that. We dispute the notion whether she has a claim against the client. And I understand that. And what I would say – She doesn't have a claim against the client. I have difficulty understanding how an attorney's lien attaches. This is a dispute not with her and the client or with her and somebody that settled on the side with the client. This is not somebody that's trying to circumvent the relationship with the client. This is a beef between employer and employer. How the attorney's lien enters into it is just kind of beyond me. Well, let me be a little bit clear with that because it's not an employer-employee relationship. She is an associated firm through a contractor agreement with Wheelop, but also agreements – Fine. The client is not a party on either side. This is a beef between two parties other than the client. That's correct. But what I would say, Judge, is when the money comes in, 100% is there, and the client has the say over what happens to it and has to authorize where it goes, at that point in time, she does have a claim against the client. And the client has a duty to ensure all the alloyages. If the money does come in, client satisfied its obligation as far as I can see. It only satisfies its obligations when it sends the 40% out to pay all the lawyers. You're talking the money's coming in from the defender. Okay, that's a big pot. Okay, you've got the pot here. Right. But there's no dispute about the 40% going off to the lawyer's side of the equation. That's correct. Isn't the client done at that point? In other words, at that point, hasn't the client satisfied all of its obligations with respect to the attorneys? I would say so, unless the client had done something like saying, The client has an agreement with the law firm that says you'll get 40% at the end of it, or the law firms, and it says, terrific, you have the trust account. It puts the 40% here, and here's the 40% to pay all the lawyers. Or put it more differently, I suppose, in the real world. What happens is the lawyers take out 60% and write a check for that to the client. Yes. Okay, so now we've got the client's done, right? The client's done at that point. Nobody can make any claims against the client at that point. That's correct. And you've got to understand here is that that didn't cut off the lien rights of all the other unnamed lawyers that were in this case. And the court recognized, and they all got paid as if they had lien rights and had rights to that money, whereas Ms. Brand didn't. But anyways, I want to go back to the point from the judge a little bit. Did the court talk about lien rights or simply say the others got paid? They simply said the others got paid. So the Supreme Court's not affirmatively recognized any lien rights there. I've never seen anything that recognized attorneys' lien rights at that stage. The Supreme Court recognized that all these lawyers had claims to be paid, including your client, and she got paid. Those lawyers couldn't have been paid unless they were secured creditors at the point in time when they did get paid. They got paid. Which is implicitly recognized in their lien rights. Well, you can try to construct the reason, but the court didn't say, I'm going to recognize an attorney's lien in that context, did it? No, it didn't. Okay. And I do want to return to this point because I do think it's an important point where we talk about the claims against the client. Because when the lien attaches is when that money comes in. And because that money is dispersed by the client and eliminates the claims to itself at that point, it doesn't mean the lien disappears at that given point. I would think that everyone would look at it and say, Ms. Brand had claims against the client at the point in time the money comes in. And that's not secured by anybody. Counsel, you said that the lien attaches when the money came in. That's a strange lien indeed. How do you get that out of the Oregon statute? I thought that when services are rendered, that the lien attaches if it attaches at all. You're saying that's not true. In this case, it only attaches when the money comes in. No, and I was probably inarticulate in what I said there, Judge. What I meant to say, you obviously, when you're a lawyer working on a contingency case, you have a lien on the whole case itself at that point in time. But from the beginning of the work, right? Right. From the beginning of the work, but when you get an award and you look at the language of the statute, it talks about it's on the judgment, the award, the proceeds. When that comes in, then your lien is on those proceeds at that point in time. You're assuming, let's go back to the beginning. When do you believe your client's lien, if any, attached to the pain pump clients or their lawsuit? Upon the beginning of the commencement of a lawsuit. Upon the commencement of an act. Okay. So you think there was just a lien right along there. That's correct. Oh, I'm sorry. And that lien, from your perspective, just continued on. Once the money was paid, it was transformed from the lawsuit to the funds, and it continued there. Now, when those funds were paid out, then, of course, there's far less for the lien to be on. You're saying that even though all the funds were gone, and arguably there's nothing on which the lien can attach, there still is a lien. What does that lien attach to? It follows the proceeds into the Wheelop Trust account. Okay. So you're saying that because Wheelop still has some money, that it's in there. That's correct. Okay. Does she have any lien on money distributed to other lawyers that came out of that same 40%? Arguably. Arguably. But we didn't make that argument. She tried to sue anybody else? No, because we knew where the money was, and it was right there. We knew who had it, who had her share. It was right there. But it was money that came from the client. I want to focus on this. The attorney's charging lien is to make sure that the attorney gets paid, right? That's correct. For the fruits of their labor. I understand that. And let's assume, I want to get you past all your other difficulties in this case. We get to the point when the proceeds of the lawsuit are distributed from the defendant to the plaintiffs. And the client has a charging lien against her at that point, or him, and says, I would like to get this lien off my record. So here's the 40% I owe you. Right. So if the client pays the attorneys, and the client pays the contract lawyers, doesn't that end the lien? For the client. Yeah. But isn't the only, isn't the lien only to make sure that the client pays the attorneys? The question I have is if the client does that, what authority do you have for the notion that the lien follow, internally, that the liens follow thereafter as secured interests in the proceeds as opposed to just having a contract dispute among the various attorneys about who gets what? It seems to me the lien runs against the client's recovery. And once the client pays that recovery, isn't the lien discharged? Well, we know it doesn't run just against the client recovery from Potter v. Schlesser because the client took off the pot. But, Potter, that's a very different context. That's not a dispute between co-lawyers or anything else. That's making sure the attorney gets paid for what the attorney did for the client. That's correct. This is very different. And the question we've posed to you several times, is there any authority suggesting the application of an attorney's lien in this context? And so far, I've heard none. Well, no. I mean, there's not very many cases, Judge. No, I didn't say not very many. I said I've heard none. Well, no. I've given the court the iter task case from New York that had almost the exact same circumstances we have. And it's the closest case that exists anywhere in the country. Every case they've given you has different language or a different statute. Well, different concept. What's that? Here, we're not talking about the obligation of the client. We're talking about an obligation of another law firm. And that's just not what I understand an attorney's lien to be about. And so I'll look at that case from New York, but that's the problem I got. Okay. It's a very unique factual circumstance as we have here, Judge. But what I want to say is that one. But there are lots of circumstances where employers and employees or contractors, independent contractors and contracting parties, have relationships. And there are other laws intended to speak to that. The attorney's lien usually isn't one of them. But that's the one you're trying to cite to us. And that's okay. That's correct. And that's because the pot is still here to be enforced against. Yeah. And that was my question. Can you cite us any case in which the client paid every penny to the lawyers that the client was supposed to, and the attorney's lien statute was applied in terms of dividing up the proceeds among the lawyers? Only the intertask case I referred to. But, Judge, I would say there's no case on the other side either. There's not a single piece of authority that says it doesn't go this way. And I think it's important to look at Potter, and I understand it's a different factual circumstance, but there the lien didn't just follow the proceeds. It created a judgment in and of itself against the defendant in that case. So it's not just limited to the party. And I see my time's run out. So thank you, Judge. Thank you. Good morning. May it please the Court. Robin Aoyagi on behalf of Williams Love. An attorney lien charges against the client's recovery and the client's lawsuit. And it is implicit in every single case, and there's one case that specifically addresses this point, that what people are trying to do, what attorneys are trying to do when they want to use an attorney's lawsuit to shoehorn in a contract dispute that they're having with another attorney, is what they're really trying to do is assert a lien against the other attorney. And there's no such lien that exists. And the D.C. Circuit case makes a specific point about that, but that's in every single case. The whole point here is that every case says that an attorney's lien charges against the client recovery and the client lawsuit. And cases like Potter, in fact, make it very clear that an attorney's lien is extremely serious. Not only can you go against the client themselves, you can go against the other side in the lawsuit. And so the idea that somehow that this lien is sort of a free-floating idea and that once the client, even once the client pays it, that there's still this obligation out there. There's just no case law whatsoever to support it. How is the lien discharged? How is the lien discharged? Yeah. It's discharged by complying with the contractual obligation to pay attorney's fees, which in this case, both the agreements said, I, the client, agree to pay these specific law firms, Williams, Love, and one other law firm in one of the agreements and two other law firms in the other agreements, and you're allowed to associate people, I have to say that, because there's an Oregon ethics rule that says that if you're going to fee share, that I have to consent to it. You can share it, but anybody you share with is bound by the terms of this agreement, and the agreement says, I'll pay you. So in this case, assuming that a lien had attached in favor of the appellant here, and the client wrote a check, which is not the way this stuff works, but the client wrote a check in the amount of 40 percent to all the firms, jointly to all the firms that she had a, that the client had an agreement with, would that discharge the lien? Well, there's specifically, the only specific rule on this in Oregon, and we haven't really focused on that much in this case. I tried to look back at the record yesterday to see if it was clear, but there's a rule in Oregon, ORS 87-745, that says that if a client pays any attorney of record, then the lien is discharged, as to all of the attorneys. So I wasn't able to find all the pleadings from the underline. There were a lot of cases, and figure out exactly who would be an attorney of record, but my understanding is that there would not have been any case in which Ms. Brand appeared on her own as unaffiliated with Williams Love, and so paying Williams Love would have discharged the lien, in my view. Given what you just said, let's just say hypothetically that the client had paid the petitioner in this case, and not the Williams Love firm. What happens then? Well, under that statute, that would effectively discharge the lien as to Williams Love. The lien would be discharged, and then they would fight about it. Would Williams Love have a lien against her? Well, there wouldn't be anything, because the client would be paying a much smaller amount to her. She was a contract attorney getting an hourly rate, and frankly, it would be impossible on this case, because the entire fee structure between Williams Love and Brand was so incredibly different than the fee structure between Williams Love and its clients, that there is no way for an individual pain-plump client to even figure out what they could possibly owe her, if anything, and so they couldn't even do it. I was just trying to legally understand the concept. If somehow they could have determined that, and they paid it to her, their theory seems to be that the lien follows the fund, and it really doesn't matter which of the attorneys is involved. My question is, if they are correct, then would Williams Love have had a lien against her? It's such a bizarre scenario that it demonstrates perfectly why her argument does not make sense. But if they paid her the $5,000 say that she thinks she was entitled in one case, would that technically end up discharging the lien because of the way 87-74-5 is phrased? Probably because no one foresees this scenario in which a lawyer who wasn't covered by the fee agreement and did not have any obligation to be paid under the fee agreement would be able to affect the lien as to those who did have an obligation. And this goes with the fundamental concept of a lien. So contrary to what Mr. Cox said, all of the cases in the country support our position on this. There is not an Oregon case where someone has tried to get a lien in this scenario, but we have Oregon case law explaining what the purpose of a lien is, such as Potter and Farron. And every case that has looked at these issues has said, we don't give a lien to someone who the client doesn't have an obligation to pay. It either has to be an express obligation to pay or it has to be implied, which is usually viewed as sort of a quantum merit basis, and that comes out of the common law. And the only case that they're citing, which they acknowledge now is the only case they're relying on, is Itar-Tas, but that's a different statute. It's a New York statute that says that it's the attorney of record who has a lien in the case. And if you look at E.W. Howell, which is a much more on-point case from the New York court, and this is New York state law, it acknowledges that that case, it did involve a different type of, it involved a lien on the papers, but it's the same concept of a lien. It was, is this attorney entitled to payment from the client directly? And if not, they can't get a lien. And so the court said, this attorney is not entitled to payment from the client because with the insurance company that hired them, that's the only person they can look to for payment, and then therefore they can't get a lien on the client's property because the person obligated to pay them is the insurance company. So Itar-Tas, the only case that they view as supporting them, I don't believe does support them, and is contradicted by E.W. Howell, which is much more on point and is actually New York state law. So. Roberts, I guess I keep returning to the question I asked before. Is there any case law that suggests that a lien remains on the proceeds after all the, after payment by the client, after satisfaction by the client of her, of his or her obligations under the retainer agreement? Howell, not that I've ever seen. Roberts, and that's what I'm having some difficulty with in this case. Even if there were a lien, and I think you argued that there isn't, I thought it was simply to make sure that the client discharged his or her obligation to the attorneys as opposed to whether the attorneys discharged their obligations to each other. That's absolutely correct. And Itar-Tas itself says that the purpose of a charging lien, and these come out of the common law, the purpose is to protect attorneys from the knavery of their clients and to prevent clients, that is a quote, and to prevent clients from running off with the proceeds, as happened in Potter, where someone got a settlement and immediately became unavailable and the lawyer had no other means of recourse. They couldn't get the money from the client, and so they went after the defendant in the case. We don't get to use the word knavery very much anymore. This is your opportunity. But the client wasn't knaverous in this case, if that's a word. Correct. The client paid, the client satisfied its obligation to the law firms. Correct. And the interpretation of the Oregon Attorney Lien Statute that Ms. Brand is urging in this case would take Oregon completely out of line with every other court that has considered how attorney liens function. It's inconsistent with the language of the statute, especially if you look at the statute and the context in which it has evolved. It is very clear that you have to have an obligation to the client before you can,  before the attorney has a lien attaching the client's property. That's just fundamental to the concept of a lien, as discussed in Potter and Ferrin, and it's fundamental to an attorney's lien, specifically under the statute and how it's evolved and how it's been recognized in every other court. If the court would like me to, I would just like to briefly address the legal rate being the federal judgment rate. If the court has any questions about that issue, I know Mr. Cox didn't have an opportunity to talk about that in his opening remarks, but the short version on this issue is that Cartolucci is absolutely controlling on this issue. It was the first, this was the first circuit to decide this issue, but it's been a very persuasive opinion. Numerous other courts have adopted it. Everyone recognizes, including New York, that it is the majority rule, and it's clear from their reply brief that at this point they're just relying on two bankruptcy court decisions out of New York that don't even squarely address the issue and don't even talk about the fact that there's a more recent bankruptcy decision court out of New York that acknowledges the majority rule under Cartolucci. So on that particular issue, I'll submit that one on the briefs because I think it's clear, and then if the court has any other questions, I'd be happy to answer them. Apparently not. Thank you. Thank you. So just briefly to conclude then, there's two very specific issues in this case, and on both of them we have thoughtful and complete decisions from both the bankruptcy judge, Judge Paris, and the district court through Chief Judge Aiken, and both of these issues are controlled by existing Ninth Circuit precedent, including the Hahn case, which I didn't talk about but I think is clearly briefed. So the decision of the court should be affirmed. Rebuttal. Thanks, Judge, and I erred in not reserving any rebuttal time, so I'll keep it very, very brief. We keep talking about the client having paid this lien, which I think kind of ignores the facts a little bit about how this works because what happened in this case is settlement proceeds come into Wheelop's trust account, as we know, and then Wheelop's the one who picks the client out of it, but the money never left Wheelop's trust account before the lien was satisfied on it. But counsel, getting back to the knavery of the client concept, that doesn't really satisfy that because in this case there was no knavery. The client did pay. Once the money is in the trust account, what does the client have to do with it? What does the purpose of the statute have to do with what you're talking about? Well, the client has an obligation to ensure that all the lawyers are paid. Does the client? No, he doesn't. No, he doesn't. He's not obligated to divvy it up. Well, what makes the client obligated to figure out which lawyer should get which piece of the pie? Well, I mean, the lawyer knows, okay, I mean, the client Answer that question. What makes the client responsible for dividing the money up amongst the lawyers? The fact that the client agreed to fee sharing in the client retainer agreements. But how's the client supposed to know how the fee gets shared? All those arrangements are amongst the attorneys. No, but Did the client sign the agreement between your client and the law firm? No, but How's he supposed to know what the terms are? The client signed an agreement that's not signed by any other lawyers, and so the contracts say that, I'll give you an example of This is a complete fiction to say that the client is somehow responsible for the relationships among the lawyers and could be held accountable for them. The client is off the hook. You wouldn't dare sue the client for what your client is doing. No, we didn't. And I think you're right that once the client puts the 40% into the trust fund and it's sitting there to be divided amongst the lawyers The client is off the hook. I wouldn't say the client's off the hook. I'm trying not to, but I don't see how the client could possibly be on the hook for anything. The client's made good. The lawyers squabble amongst themselves. That really shouldn't be the client's problem. I agree with that. And I think that when the money's in the trust account, the lawyers have an obligation to that client to make sure it's distributed correctly. But if that lawyer commits malpractice, I don't think in the real world that that doesn't mean you wave some claim against the client if the client is involved in the lawyer's knavery in taking the money to itself or someone else. And here we have this knavery. But what I wanted to make a point of is We have to find knavery somewhere. Yeah. The client has paid the lawyers. The client here never made a decision that I'm paying this money to A, B, C, or D. The money was just sitting in the trust account and hadn't been distributed or paid to anybody. So there hadn't been an act of the client paying the lawyers when she's saying, I'm entitled to my share out of this fund here. But here's the problem we're having. And I guess maybe it doesn't bear repeating, but I'm doing it anyway. We don't have any doubt your client has a claim against the money. The question is whether she has a lien against the money. And I'm having difficulty figuring out, since the lien is to protect the lawyers against the client, and the client has completely complied with all obligations that the client had under any fee agreement, why the lien continues thereafter. That's my difficulty. And my answer would be I respectfully disagree that the lien is only intended to protect the lawyer against the client because the lien is a charging lien that follows outside the client, outside of other things. And I would say the lien is broader than just protecting against the client. But you do agree the client was off the hook when the 40 percent was kept? I do when it's paid out, yes. No, no, when it was kept. When the 40 percent was put into the trust account, hasn't now the client done everything the client agreed to do? Yes. But I think that there could be a claim where the client is sued and you say, here's money sitting in this trust account, we need a declaration against this client that's being paid out to all the right lawyers, and the client just can't wash its hands by saying I'm giving it to a lawyer when I know I was represented by A, B, C, and D. So there conceivably could be a case. So I don't want to say it's 100 percent, but I would think in most circumstances, the client's got the money there, the client's done what it's supposed to do, they're supposed to be protected by WELOP and distributing the money correctly. It's hard for us to run. We're not going to run into court and sue the client. We know that. We didn't do that here. It's just the pragmatic nature of the thing. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Clifton, Smith, Hurwitz